# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

JANE DOE,

*Plaintiff,*

- *against* -

BRIAN WARNER a/k/a MARILYN
MANSON; INTERSCOPE MUSIC
PUBLISHING, INC.; NOTHING
RECORDS; and DOES 1–20, whose
identities are unknown to Plaintiff,

*Defendants.*

Index No. _____

**SUMMONS**

Date Index No. Purchased: January 30, 2023

**TO THE ABOVE NAMED DEFENDANTS:**

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the

Complaint, a copy of which is hereby served upon you, and to serve a copy of your Answer to the

Complaint upon the undersigned attorneys listed below within twenty (20) days after the service

of this Summons, exclusive of the day of service (or within thirty (30) days after the service is

complete if this Summons is not personally delivered to you within the State of New York); and

in the case of your failure to appear or answer, judgment by default will be taken against you for

the relief demanded herein.

Plaintiff designates Nassau County as the place of trial. The basis of venue is that a

substantial part of the events giving rise to the claim occurred in Nassau County.

Dated: January 30, 2023      **JEFF ANDERSON & ASSOCIATES PA**

Jeffrey R. Anderson
Trusha Goffe
Patrick Stoneking
55 West 39th Street, 11th Floor
New York, NY 10018
(646) 759-2551
jeff@andersonadvocates.com
trusha@andersonadvocates.com
pstoneking@andersonadvocates.com

and

**KBM LAW**

Karen Barth Menzies (*pro hac vice to be filed*)
6701 Center Drive West, 1400
Los Angeles, CA 90045
Telephone : (310) 363-0030


*Counsel for Plaintiff Jane Doe*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

JANE DOE,

           Plaintiff,

      - *against* -

BRIAN WARNER a/k/a MARILYN
MANSON; INTERSCOPE MUSIC
PUBLISHING, INC.; NOTHING
RECORDS; and DOES 1–20, whose
identities are unknown to Plaintiff,

          Defendants.

Index No. _____

**COMPLAINT**
**AND DEMAND**
**FOR JURY TRIAL**

Plaintiff Jane Doe ("Plaintiff"), by and through her undersigned attorneys, states and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, Jane Doe is a survivor of childhood and adult sexual abuse, sexual battery, assault, and molestation at the hands of Defendant Brian Warner, who goes by the stage name Marilyn Manson.

2. Defendant Warner's pedophilic obsessions and violent behaviors were not only known by Defendants Interscope and Nothing Records, but they were celebrated and promoted for their collective financial gain.

3. Defendant Warner first targeted Plaintiff in 1995 when she was 16 years old, using his role, status, and power as an adult and performer in the music industry to gain access to, groom, manipulate and exploit Plaintiff, resulting in sexual assault in two separate incidents.

4. Then, in 1999 when Plaintiff was approximately 19 years old, Defendant Warner perptuated his grooming, manipulation, exploitation and sexual assault of Plaintiff over the

1

course of approximately 4 weeks.

5.       Upon information and belief, Defendants Interscope and Nothing Records were aware of Defendant Warner's practice of sexually assaulting minors, and aided and abetted such behavior. As a result of Brian Warner's sexual abuse and assault, enabled and encouraged by Defendants Interscope and Nothing Records, Plaintiff has suffered severe emotional, physical and psychological distress, including shame, and guilt, economic loss, economic capacity and emotional loss.

6.       Defendants Interscope and Nothing Records knowingly, intentionally, willfully, deliberately, and recklessly fostered a pervasive and hostile environment for the purpose of financial gain that utterly disregarded the rights and safety of the band's young fans. As a result, Plaintiff has suffered humiliation, shame, and horror that she will continue to suffer for the rest of her life.

## PARTIES, JURISDICTION, AND VENUE

7.       Plaintiff Jane Doe, is an adult female residing in Maryland. The name utilized by Plaintiff in this Complaint is fictitious to protect her privacy as a victim of child and adult sexual assault and molestation.

8.       Plaintiff was born in 1979. At the relevant time period in 1999, Plaintiff was an adult residing in Maryland.

9.       Defendant Warner was born in 1969 and at all times herein was and is an adult male individual living in Los Angeles, California.

10.      Defendant Interscope Music Publishing, Inc. ("Interscope") is a Delaware corporation with its principal place of business in Santa Monica, California.

11.      Defendant Nothing Records was an American record label originally founded in Cleveland and incorporated in Ohio. It had offices in New York City, New Orleans, Louisiana,

and Cleveland, Ohio.

12.     As to claims arising out of sexual abuse after Plaintiff turned 18 years of age,

Plaintiff brings this Complaint pursuant to the New York Adult Survivors Act, CPLR § 214-j.

The conduct at issue included sexual offenses in violation of sections within Article 130 of the

New York Penal Law, and resulted in physical, psychological, and emotional injuries. As a civil

cause of action was previously time-barred prior to August 14, 2019, the Adult Survivors Act,

CPLR § 214-j, revives the claims set forth below.

13.     Plaintiff is informed and believes and thereon alleges that the true names and

capacities, whether individual, corporate, associate, or otherwise of Defendants named herein as

Defendants Does 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues

Defendants Does 1 through 20 by such fictitious names, and who will amend the Complaint to

show their true names and capacities when such names have been ascertained pursuant to CPLR

§ 1024. Plaintiff is informed and believes and thereon alleges that Does 1 through 20 are legally

responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that

caused the injuries and damages alleged in this Complaint.

14.     Whenever reference is made to any defendant entity, such reference includes that

entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition,

whenever reference is made to any act, deed, or transaction of any entity, the allegation means

that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents,

employees, or representatives while they were actively engaged in the management, direction,

control, or transaction of the entity's business or affairs.

15.     Each of the Defendants aided and abetted each other Defendant. Each Defendant

knowingly gave substantial assistance to each other Defendant, including Defendant Warner,

who performed the wrongful conduct alleged herein. Accordingly, each Defendant is jointly and

severally liable for the damages proximately caused by Defendant Warner's and each other

Defendant's wrongful conduct.

16.     This Court has jurisdiction pursuant to CPLR § 302 because Defendants transacts

business within the state of New York and because Defendants committed tortious acts within

the state of New York, and specifically within the County of Nassau.

## **FACTUAL ALLEGATIONS**

### *Interscope and Nothing Records Sign Defendant Warner and his band "Marilyn Manson" and Promote His Sexual Deviance and Violence to Children*

17.     Defendant Warner described his working relationship with Defendant Nothing

Records and its founder, Trent Reznor, as beginning in the early 1990's at the infamous

Hollywood Hills home where Charles Manson's disciples murdered pregnant movie star Sharon

Tate. According to Defendant Warner's 1998 autobiography, *The Long Hard Road out of Hell*

(written by Defendant Warner and Neil Strauss), Defendant Warner boasted that he and his

friend Reznor sexually abused a woman and on the next day, Reznor told Defendant Warner

that, "he was starting his own label through Interscope Records called Nothing, and he wanted

Marilyn Manson to be the first band on it." Marilyn Manson was the first band signed to

Defendant Nothing Records' label.

18.     In 1993, Defendants produced *Portrait of an American Family,* the first Marilyn

Manson release on Defendant Interscope and Defendant Nothing Records – an album that has

sold millions of copies to date. The album was recorded in various studios across the country

including Reznor's studio inside the Tate Murder house. Songs on the album use child themes

and refer to rape and sodomy. One song borrows lyrics written by Charles Manson. Lyrics on the

album include, "I am the pedophile's dream, a messianic peter pan."

19.     Defendants released music videos associated with songs from the album. The

4

video for the song "Dope Hat" was featured on MTV and includes Defendant Warner as a Willy Wonka character performing alongside children while exposing them to psychedelic scenes of violence and sex with words on the screen like "THE BOYS TASTE LIKE BOYS" and "THE GIRLS TASTE LIKE GIRLS."

20.     Defendant Nothing Records and Defendant Warner attempted to include a naked photograph of Defendant Warner as a child in the insert for the Marilyn Manson album *Portrait of an American Family*. According to Defendant Warner's autobiography, "[T]he lawyers at Interscope said, 'First off, that picture's going to be considered child pornography, and not only will no stores carry the album but we're subject to legal retribution from it.' They said if a judge were to look at it, the law states that if a photograph of a minor elicits sexual excitement then it's considered child pornography. I said, 'That's exactly my point.'"[1] As such, Defendant Interscope and Defendant Nothing Records were well aware of Defendant Warner's obsession with child pornography and pedophilia and his desire to expose children across America to sexual themes. Defendant Interscope had the ability to stop Defendant Warner from including images and symbols of children, violence and sexual deviance in Marilyn Manson albums and merchandise, but chose not to. Instead, Defendant Interscope and Defendant Nothing Records promoted Defendant Warner's pedophilia and violence for added publicity and financial gain.

---

[1] Manson, Marilyn; Strauss, Neil, *The Long Hard Road Out of Hell*, page 206, New York: Harper Collins division ReganBooks. ISBM 0-06-039258-4 (February 14, 1998).

5

21.     Below are two examples of fliers distributed by Defendants promoting Defendant

Warner and his band in 1994. The flyers include images of two disoriented/drugged children

being held by Defendant Warner's character like puppets: a young boy with an exposed penis

and a young girl in pigtails with exposed breasts along with the words "All ages welcome" and

the lyrics, "I am the pedophile's dream". The imagery includes candy and a milk carton

referencing a missing child.



22.     Another flyer includes two small, completely naked children, again with pigtails and immature physical characteristics alongside drug paraphanalia and references to Satan and pedophilia. For example, the spiral symbol on the bottom left of the flyer below and next to the top hat in the flyer above is consistent with what the FBI[2] has identified as "Symbols and Logos Used by Pedophiles to Identify Sexual Preferences" referencing a "Little Boy Lover."





UNCLASSIFIED

(U) LBLogo aka "Little Boy Lover"

23.     Defendants often incorporated such pedophilia symbols in their promotional materials. The above-referenced spiral logo is incorporated into the lettering on the album artwork for the "Smells Like Children" album seen below. Similarly, other symbols associated with pedophilia are visible on Defendant Warner's body while he performs, as shown below.

[2] Federal Bureau of Investigation Intelligence Bulletin, Cyber Division, Innocent Images National Initiative, 31 January 2007. https://archive.org/details/fbi-pedophile-symbols/page/2/mode/2up

7



(U) LBLogo aka "Little Boy Lover"



(U) GLogo a.k.a. "Girl Lover," Childlove

24.    The flyers above include references to the "Marilyn Manson Salvation Hotline" and "the Marilyn Manson Family Intervention Hotline" and include a phone number: 407-997-9497. Upon information and belief, Defendant Warner used the Marilyn Manson Family Intervention Hotline to coax underage fans to send him child pornography, including Polaroid photographs of themselves naked. According to an interview published in a 2021 article in Rolling Stone,[3] a woman hired by Defendant Warner to run the band's fan club around 1993-94 said, "There were underage girls sending nude pictures of themselves, people writing letters in

---

[3] https://www.rollingstone.com/music/music-features/marilyn-manson-abuse-allegations-1256888/

blood." In the interview, the woman further explained that Defendant Warner referred to the fan

club's members as "the Family" (another reference to Charles Manson), and she remembers a

newsletter urging those followers to break the law: "They were like, 'We are having a contest to

see who can send us a Polaroid with the most deviant usage of our logo.'"

  25. Defendant Warner and his band created a fan club called "Satan's Bakesale."

Through the fan club, fans of any age could buy merchandise and communicate directly with the

band through telephone and mail. Defendants published the address and phone number for the

fan club on the album *Portrait of an American Family*: "Merchandise can be obtained through

Satan's Bakesale To join the Marilyn Manson Family write to: 2901 Clint Moore Rd., Suite

#404, Boca Raton, FL. 33496 or call the Marilyn Manson Family Intervention Hotline anytime at

(407-997-9437)."

  26. The last song on *Portrait of an American Family (*1994) is entitled "Misery

Machine." After the song itself concludes, there are approximately seven minutes of relative

quiet aside from a phone quietly ringing before arriving at a "hidden track," which is a voicemail

message ostensibly from a mother to the band, stating, "I want my son off of your mailing list, I

have already contacted the post office about your pornographic material that is being received in

the mail, my next stop is my attorney. I do not want this number called anymore, and I do not

want anything delivered to my address. If I receive anything else from this band, or this group,

my next phone call will be my attorney, and you will be contacted. Thank you and good-bye!"

Through the inclusion of this brazen message, even if dramatized, Defendant Interscope and

Defendant Nothing Records knew or should have known that Defendant Warner was likely using

his fan club to solicit and transmit child pornography to and from minors.

  27. In 1994, Defendant Nothing Records' founder Reznor was a well-known and

credible rockstar artist in his band Nine Inch Nails (NIN). Defendant Nothing Records and

Reznor gave Defendant Warner and his band the opportunity to be an opening act on NIN's *Self Destruct* tour. This was Defendant Warner and his band's first tour under management of the major record label Defendant Interscope. The band was on the tour from April 24, 1994 until December 11, 1994. During this tour Defendant Warner was able to meet and connect with fans, including underage fans, from across the country.

28.     Upon information and belief Defendant Warner was arrested on December 27, 1994 for "violating the adult entertainment code," as he described in his 1998 autobiography. Upon information and belief, this was the first date of Defendant Warner's band's tour, which was supported financially by Defendant Interscope, and Defendant Interscope paid for Defendant Warner's bail so he could continue the tour and promote Marilyn Manson's album *Portrait of an American Family*.

29.     On February 5, 1995, Defendant Interscope and Defendant Nothing Records released *Lunchbox*, the second single off of Marilyn Manson's album *Portrait of an American Family*. On the sleeve of the single, the album credits list the band members and describe Defendant Warner as "Rape Machine".

30.     Defendants continued to book "all ages" shows and Defendant Warner and his band continued to perform lewd and lascivious acts onstage with underage fans in the crowds.

31.     Defendant Interscope continues to promote its tight relationship with Defendant Warner and proudly admits a pattern and practice of enabling Defendant Warner and Defendant Nothing Records, inspite of their focus on child pornography, sexual deviance and violence. In a 2017 docuseries on HBO titeld *The Defiant Ones,* former Interscope records CEO and co-founder Jimmy Iovine spoke of "great artists" like Reznor and Defendant Warner and their collaborations: "what they're doing is pure as possible, what you do is you give them the keys and you say drive." As recently as 2017, Defendant Interscope's close connection with

Defendant Warner was promoted on the face of a 12-story building on Sunset Boulevard:



***Defendants Interscope and Nothing Records Enabled, Promoted and Financially Benefited
From Defendant Warner's Sexual Deviance and Violence and Drug Abuse***

32.     Defendant Warner's obsession with violence and sexual assault of children and

women is not just an act. By his own admissions, in an interview published in PURR Magazine

in 1995[4] when asked about "groupies" and tales from the road, Defendant Warner's answer was,

"I have always found that the best and most exciting stories on the road are better left a secret

because the statute of limitations." Defendant Warner boasted, "I've grown accustomed to

getting sexual excitement out of a girls' screaming. There's something about a terrified girl that I

find exciting." When explaining his music, Defendant Warner states, "That's why I dabble with

very taboo subjects like child porn, sodomy, Satan. It raises questions."

---

[4] https://www.mansonwiki.com/wiki/Interview:Richard_Kern_snapped_and_chatted_to_MARIL
YN_MANSON_for_PURR_1995

33.     Early on, Defendant Interscope expressed concern about producing and promoting Defendant Warner and his band. In an interview published in Seconds Magazine in 1996,[5] when asked if the band was dropped by Interscope at one point, Defendant Warner replied, "There's a part of a truth to that because when we recorded *Portrait Of An American Family*, Interscope did drop us. They refused to put the album out, the reason being the content of the record was in question. It was too hard to handle at the time when they were in the midst of their big Rap scandals. They had a change of heart and we stayed with them."

34.     In 1996, Access Magazine[6] published an interview with Defendant Warner, pointing out the questionable content of the songs on *Smells Like Children*: "That wasn't the only chance that they took. Tony Wiggins, a former country singer turned bus driver for Marilyn Manson on the Portrait tour, was featured on the first version of *Smells Like Children* on a track aptly titled Abuse Part One. (Note: A censored version of Wiggins' acoustic cover of Cake And Sodomy did remain on the final version of the EP). The track is a disturbing live recording of Wiggins performing a sadomasochistic act with a hopelessly submissive woman."

35.     The song "Abuse Part 2 (Confessions)" on the B-side of the original *Smells Like Children* promotional album, produced and promoted by Defendant Interscope and Defendant Nothing Records, included lyrics about a woman forcing her cousin, a young boy ("Six or seven. Really tiny, and small and innocent") to engage in sex acts, including oral copulation, and the woman knew she did "something wrong", she liked it and she "felt very powerful".

36.     In the same 1996 Access Magazine interview when asked about the *Smells Like Children* promotional album, Defendant Warner explained, "That was the way I wanted to

---

[5] https://www.mansonwiki.com/wiki/Interview:1996_I_Think_the_Children_Have_Come_for_Me_(Seconds_Magazine)

[6] https://www.mansonwiki.com/wiki/Interview:Axcess_%E2%80%A2_Marilyn_Manson_Interview

present that EP, and unfortunately I wasn't allowed to." Then Defendant Warner notes, "But, ironically enough, the record company actually printed several thousand copies of that and distributed it themselves." At least by 1994, Defendant Interscope and Defendant Nothing Records was well-aware of Defendant Warner's obsession with sexual violence and childhood sexual assault.

37.     Defendant Warner also made incriminating admissions in his autobiography published in 1998. Defendant Interscope and Defendant Nothing Records continued to produce and promote Defendant Warner's records and shows, enabling his ability to use his authority, power, and fame to exploit, harass, and assault young fans.

38.     Despite his lewd and illegal behavior, Defendant Interscope and Defendant Nothing Records continued to produce albums and promote Defendant Warner and his band, increasing the profits for all Defendants. The band's second full length album, *Antichrist Superstar*, released in 1996, was a commercial success, reaching number three on the Billboard 200. Defendant Warner and his band were featured on the cover of multiple magazines including Rolling Stone magazine.

39.     In 1998, the band's *Mechanical Animals* album reached number one on the Billboard 200, as well as topping the charts in Australia and Canada.

40.     The band's success empowered Defendant Warner even more, gaining him the status and authority that would cause those around him, including Defendant Interscope and Defendant Nothing Records to enable, profit from, accept, or simply ignore his violent and illegal actions, including drug abuse and sexual assault.

***Defendant Warner Sexually Assaults Plaintiff at Age 16***

41.     Plaintiff learned of the band Marilyn Manson in 1995, after seeing someone wearing one of the band's t-shirts. She went to a local record shop and bought their CD, *A

13

*Portrait of An American Family*, produced by Defendants Interscope and Nothing Records.
Plaintiff also learned about the band's fanclub called Satan's Bakesale, which sent flyers to fans
with a "WARNING" label on the back of the flyer, that is more accurately described as an
advertisement:



42.     Defendant Interscope and Defendant Nothing Records were promoting Defendant
Warner and his band at this time knew or should have known of the promotional materials the
band was sending to underage and young fans. Defendants profited from these promotional
materials that admittedly "advocat[e]" and "encourage[e]" violence, sexual conduct and illegal
use of alcohol and drugs to an audience that includes children.

43.     In the fall of 1995, Defendant Warner was on a national tour, promoting the
upcoming release of *Smells Like Children*, the band's second album released through Defendant
Interscope and Defendant Nothing Records. Upon information and belief, Defendant Interscope
and Defendant Nothing Records financially supported Defendant Warner and his band, including
touring costs, transportation, lodging, support, road crew payroll, and other expenses, along with
marketing costs like radio and video promotion.

44.     On an early evening on September 15th, 1995, a few days after Plaintiff's 16th birthday, Plaintiff attended an all-ages concert where Defendant Warner performed with his band. Defendant Interscope and Defendant Nothing Records marketed and promoted the show.

45.     After the show, a group of about twenty young fans gathered outside the venue in front of Defendant Warner's tour bus in hopes to see Defendant Warner and his band. Fans waited in line for autographs. Plaintiff and three other underage female fans, waited to meet Defendant Warner and other band members. Defendant Warner was looking at the girls and began talking to them. Defendant Warner took Plaintiff and one of the other younger girls onto the tour bus. Defendant Warner questioned the minors, including Plaintiff, specifically asking what each of their ages were, what grades in school they were in, and where their parents were at the time. Defendant Warner then asked both children for their home addresses and phone numbers, jotting them down, suggesting that he would send them both promotional material from his fan club.

46.     While on the tour bus, Defendant Warner performed various acts of criminal sexual conduct upon Plaintiff, who was a virgin at the time, including but not limited to forced copulation and vaginal penetration. One of the band members watched Defendant Warner sexually assault Plaintiff. Plaintiff was in pain, scared, upset, humiliated and confused. After he was done, Defendant Warner laughed at her. Plaintiff is informed and thereon alleges that all of the sexually abusive and harassing conduct alleged herein was done to satisfy Defendant Warner's own prurient sexual desires. Then Defendant Warner demanded Plaintiff to "get the fuck off of my bus" and threatened Plaintiff that, if she told anyone, he would kill her and her family.

47.     When Plaintiff left the bus, Defendant Warner's tour manager was there and gave Plaintiff a piece of paper with the private 1-800 number for Defendant Warner's band, so she

could "stay in touch" with the band and come to more shows. The tour manager also gave

Plaintiff a secret, heavy metal themed password. Plaintiff was told that this password was given

out to girls while on tour to gain special access to the band, including Defendant Warner.

Terrified, Plaintiff took the piece of paper, and rushed off the bus, convinced she must keep her

mouth shut or Defendant Warner would kill her and her family.

48. Within days of Defendant Warner's sexual assault and afraid to tell anyone about

the assault, Plaintiff at age 16 started using drugs for the first time in her life, which began her

addiction with drugs and alcohol that continued for many years.

49. Within weeks, Defendant Warner began calling Plaintiff at her home, soliciting

Plaintiff to send explicit sexual photos of her and her friends to his fan club, Satan's Bakesale.

Defendant Warner also began communicating with Plaintiff directly through an Internet chat

group.

50. Acting on the encouragement and insistence of Defendant Warner, Plaintiff went

to New Orleans, Louisiana to attend another performance by Defendant Warner and his band on

December 9, 1995. The tour manager for Defendant Warner and his band provided Plaintiff with

tickets for the performance, as well as a photo pass that gave Plaintiff additional access within

the venue. After the show, Defendant Warner took Plaintiff onto the tour bus once again. He

groomed Plaintiff by complimenting her, playing with her hair and looking at the photos and

drawings she brought with her. Plaintiff, still a young 16 year old child, had brought her personal

drawings and photos, including some that were styled and taken at the direction of Defendant

Warner of her and her friends. Naïve to their meaning, Plaintiff drew the pedophilia symbols she

saw on Defendants' marketing materials, merchandise and record albums and CDs on the

drawings she made of Defendant Warner, one of the other band members, and words, lyrics and

symbols related to the band.

16

51.     Plaintiff's drawings at age 16, some of which are shown below, were strikingly similar to the promotional fliers Defendant Interscope and Nothing Records distributed to



promote Defendant Warner and his band, including the same symbols and language and lyrics of the band, including "I am the pedophile's Dream… Messianic Peter Pan".

52.      Defendant Warner kept some of the drawings and photographs Plaintiff gave him that night.

53.      Defendant Warner then became more aggressive and again sexually assaulted Plaintiff, including kissing, biting her breast, oral copulation, and penetration. Another man involved with the tour was on the bus at the time Defendant Warner sexually assaulted Plaintiff. Upon information and belief this man was an employee of Defendants. After the second assault, Defendant Warner acted in a kinder manner nicer to Plaintiff and told her that he wanted to see her again.

17

***Defendant Warner Continues to Sexually Assault Plaintiff at Age 19***

54.     Through her teenage years, Plaintiff continued to be interested in the music scene. Plaintiff was put in touch with Chris Vrenna, drummer of Reznor's band Nine Inch Nails. When Plaintiff turned 18, Vrenna encouraged Plaintiff to move to Los Angeles and they began dating. Vrenna had a close association with Defendant Warner and was a credited member of the production team on Marilyn Manson albums before he joined the Marilyn Manson band as its keyboardist and drummer from 2004-2011.

55.     In March 1999, when Plaintiff was age 19 and living in Los Angeles, California, she attended a concert and Marilyn Manson was the opening band. After the show, Plaintiff encountered a member of Defendant Warner's band who encouraged Plaintiff to attend another performance in Texas, which she did.

56.     At this time, Plaintiff had not recovered from the original childhood sexual assaults and grooming by Defendant Warner. She was still addicted to drugs and alcohol that she used to self-medicate. Plaintiff was susceptible to influence from the power and celebrity of Defendant Warner. Under these circumstances, Plaintiff was lured into Defendants' dark world of drugs, alcohol, sexual deviance, harassment, abuse and assault.

57.     On March 23, 1999, Plaintiff flew to Texas to see Defendant Warner's band again. After the show, Plaintiff spoke to the band's bus driver, who invited her to come to New Orleans for the next show. Before the March 25, 1999 show in New Orleans, Plaintiff encountered a member of the band who introduced her to Defendant Warner's assistant. This assistant gave Plaintiff a pass so she could attend the show and have access backstage. Before the show, Defendant Warner briefly noticed Plaintiff and made a lewd comment to her.

58.     After the show in New Orleans, numerous people, including other female fans, were waiting around. Defendant Warner peeked out from behind a closed door and looked at

everyone. Plaintiff was then told that she could stay and go into a back room. Defendant Warner made Plaintiff feel special and chosen. Defendant Warner's assistant instructed Plaintiff to continue going to the shows, suggesting that he could get her into the shows and backstage. The atmosphere backstage always included the availability of large amounts of drugs for her and others to use.

59.     Plaintiff traveled to numerous cities and states over the next 4 weeks, including New York. At each event, Defendant Warner and his band brought Plaintiff backstage and on the bus. During this period, Plaintiff encountered Defendant Warner virtually every day, including on days the band did not perform, and the two often spent hours together talking. Defendant Warner and his associates provided drugs to Plaintiff, and Defendant Warner continued to groom, harass and sexually abuse Plaintiff.

60.     While she was still a child, Defendant Warner had purposefully and intentionally laid the groundwork necessary to intimidate and control her. Despite reaching the legal age of majority, that power to psychologically intimidate and control Plaintiff was still present. When Defendant Warner chose Plaintiff out of the group to be with him in his inner circle and began grooming her again during the next shows in Florida (Tampa and Orlando), Defendant Warner's intended effect was to exert control over Plaintiff for his own sexual gratification. While in Florida, Plaintiff considered going back home. Plaintiff spoke with Defendant Warner and revealed her vulnerabilities and a general lack of support she felt from her family. As he did on countless occasions, Defendant Warner exploited this vulnerability to keep Plaintiff under his control. Defendant Warner often made Plaintiff feel alone and isolated by telling her that no one understands her other than him, which included her family. At the time, Plaintiff believed Defendant Warner and was compelled to keep following him.

***Defendant Warner Sexually Assaulted Plaintiff in Nassau and Erie Counties***

19

61.     Defendant Warner continued to groom and sexually assault Plaintiff for the next 4

weeks during this tour. The sexual assaults of Plaintiff included acts in violation of Article 130

of the New York Penal Code when the band played in Uniondale, New York on April 7, 1999

and in Buffalo, New York on April 11, 1999.

62.     Throughout the tour and while within the State of New York, when Plaintiff was

with Defendant Warner both on concert days and on off days, Defendant Warner coerced her to

have sex with him. Defendant Warner often coerced Plaintiff to have sex with him and other

band members or his assistant at the same time. Defendant Warner controlled what Plaintiff

could do, who could touch Plaintiff, and who he wanted Plaintiff to be with sexually, all while

providing Plaintiff with drugs.

63.     Defendant Warner and his assistant went to the hotel rooms of Plaintiff and other

young fans and gave Plaintiff alcohol and drugs. On one occasion, Defendant Warner overheard

Plaintiff say that she wanted to go back to Los Angeles. In response, Defendant Warner pushed

Plaintiff to stay and urged her not to leave. As is typical when a sexual predator, Defendant

Warner continued to exert power and authority to maintain control over Plaintiff. As a result of

Defendant Warner's oppressive and ongoing behavoir, Plaintiff was unable to defend and extract

herself from the abuse.

64.     Defendant Warner's emotional manipulation of Plaintiff began to include hostile

and verbally abusive behavior. At times, he began ridiculing Plaintiff, especially in the presence

of other young female fans. Defendant Warner openly called her racial slurs and called her fat.

At other times, Defendant Warner told Plaintiff she was beautiful and confided in her some of

his most personal secrets. Plaintiff saw Defendant Warner almost every day (except when his

fiancée was in town), before, during, and after his shows.

65.     Later in April of 1999, Plaintiff and a few friends were in the lobby of the hotel

where the band was staying. There, Plaintiff encountered Defendant Warner's long-time security guard, who told the girls that Defendant Warner was on the phone with his fiancée. After about 30 minutes, the security guard returned and told Plaintiff that Defendant Warner wanted her to come upstairs and stay with him tonight. Plaintiff was concerned because Defendant Warner was just on the phone with his fiancée and was likely high on cocaine. Under such circumstances, Defendant Warner had been sexually violent with Plaintiff in the past. Plaintiff found the strength to stay away because she was afraid to be left alone with Defendant Warner. After that night, Defendant Warner became more demanding, abusive, and threatening toward Plaintiff.

66.    A few nights later, on April 28, 1999, Defendant Warner's band played their last concert of this tour in Cedar Rapids, Iowa, canceling the rest of the tour in the aftermath of the Columbine high school shooting. Defendant Warner stormed off stage, ending the show early. Defendant Warner's assistant took the group, including Plaintiff, backstage after the show, where Plaintiff saw Defendant Warner sitting in the back room and laughing.

### *Defendants Retaliate Against Plaintiff*

67.    Defendant Warner started online contact with Plantiff in 1995 when Plaintiff was a minor. This contact took place between Defendant Warner and a minor over state lines thru America Online chats.

68.    In 2021, after several women came forward with reports of their own abuse at the hands of Defendant Warner, Plantiff came forward online. Upon information and belief, in response to Plaintiff coming forward, Plantiff was subjected to several acts of retaliation. These acts included publicly revealing sensitive information about Plaintiff ("doxxing"), hacking Plaintiff's Instagram account, and systematic harassment through numerous websites by Defendant Warner and his fans. Upon information and belief, Defendant Warner and his wife are retaliating against Plaintiff through a particular YouTuber who has profited by discrediting,

21

victim blaming, and shaming Defendant Warner's victims.

69.     Defendant Warner coerced Plaintiff by: (1) using his seniority, authority and

celebrity to emotionally manipulate Plaintiff; (2) sexually grooming her to trust him, satisfy his

prurient desires, and concede to him; (3) encouraging Plaintiff to become emotionally dependent

upon him, and thus further exerting his control over her; and (4) providing her with alcohol and

illegal drugs; (5) using the financial resources and other enticements provided by Defendants or

Defendants' personnel to access, manipulate and abuse Plaintiff; and other ways too numerous to

list herein.

70.     The grooming, sexual abuse, harassment and/or assaults were committed by

Defendant Warner for his sexual gratification and were based upon the gender of the Plaintiff.

## COUNT I
### Sexual Battery
### (As to Defendant Brian Warner)

71.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set

forth under this count.

72.     In approximately September and December 1995, while Plaintiff was under the

age of eighteen years of age, Defendant Warner engaged in unpermitted, harmful, and offensive

bodily sexual contact upon Plaintiff's person. Defendant's conduct constituted criminal sexual

conduct under state laws.

73.     At the time Defendant Warner committed these criminal sexual acts, Plaintiff was

a minor, was not capable of consenting, and did not consent.

74.     In approximately March and April 1999, Defendant Brian Warner engaged in a

course of unpermitted, harmful, and offensive bodily sexual contact upon the person of Plaintiff.

Defendant's conduct was in violation of several sections within Article 130 of the New York

Penal Code while both parties were present within the State of New York.

75.     Plaintiff did not consent to the harmful bodily contact.

76.     As a direct and proximate result of the foregoing, Plaintiff sustained physical,

emotional, and psychological injuries, along with pain and suffering.

### COUNT II
### Negligence
### (Against Defendant Interscope and Defendant Nothing Records and Does 1-20)

77.     Plaintiff repeats, re-alleges and incorporates herein by reference all consistent

paragraphs of this Complaint as if fully set forth herein.

78.     Prior to the sexual assaults described above, Defendants Interscope and Nothing

Records knew or should have known that Defendant Warner was habitually and routinely

engaged in sexual misconduct with young adults and underage children throughout the country.

79.     Prior to the sexual assaults described above, Defendants Interscope and Nothing

Records knew or should have known that Defendant Warner was a serial sexual predator and/or

sexually assaulted children and women.

80.     Prior to the sexual assaults described above, Defendants Interscope and Nothing

Records knew or should have known that Defendant Warner was engaged in soliciting,

transmitting, and maintaining child pornography.

81.     Defendants Interscope and Nothing Records owed Plaintiff, a fan and invitee to

Defendant Warner's performances, a duty of reasonable care to protect the Plaintiff from injury.

82.     Defendants Interscope and Nothing Records owed Plaintiff a duty to protect her

from harm because Defendants' actions created a foreseeable risk of harm to Plaintiff.

83.     Defendants Interscope and Nothing Records owed Plaintiff a duty because it was

in a position to control Defendant Warner's access to drugs, children, and young fans.

84.     Defendant Interscope and Defendant Nothing Records owed Plaintiff a duty

because they invited Plaintiff onto the premises and facilities (performance venues, backstage,

buses and hotel) and Defendant Warner posed a dangerous condition at these facilities.

85.     Defendant Interscope and Defendant Nothing Records had a duty of reasonable care to enact policies and procedures to protect fans, such as Plaintiff, from sexual assault and molestation by performers and other persons in authority.

86.     Defendant Interscope and Defendant Nothing Records knew or should have known that Defendant Warner had a history of giving drugs to female fans he allowed backstage, onto the bus and in hotel rooms, and sexually assaulting minors and women before Defendant Warner sexually assaulted Plaintiff.

87.     Defendants Interscope and Nothing Records knew or should have known that Defendant Warner was a danger to minor children and women.

88.     Defendants Interscope and Nothing Records knew or should have known that Defendant Warner used the power, influence, status, and facilities provided by Defendants to access and sexually assault women.

89.     While Plaintiff was attending performances and invited backstage, and on the bus, Defendant Warner engaged in an illegal, harmful, and offensive sexual assaults against Plaintiff. Said conduct was undertaken after Defendant Interscope and Defendant Nothing Records knew or should have known of the risk Defendant Warner posed to children and women as a member, employee, agent or representative, and while in the course and scope of Defendant Warner's role with the record labels, and/or was ratified by the actions of the Defendant Interscope and Defendant Nothing Records.

90.     Defendant Interscope and Defendant Nothing Records' actions created a foreseeable risk of harm to Plaintiff. As a vulnerable child and young woman who Defendant Warner recruited into the venues, facilities, buses and hotel rooms provided by Defendant Interscope and Defendant Nothing Records, Plaintiff was a foreseeable victim.

24

91.     Defendant Interscope and Defendant Nothing Records knew or should have known that children and women exposed to Defendant Warner were at risk of sexual assault by Defendant Warner.

92.     Defendant Interscope and Defendant Nothing Records knew or should have known, and had the opportunity to learn of, the intentional and malicious conduct of Defendant Warner, and thereby ratified and joined in said conduct by failing to terminate, bar, disinvite, publicly admonish, or discipline Defendant Warner and/or by failing to warn anyone of Defendant Warner's known behaviors and/or by preventing contact between Defendant Warner and female fans.

93.     Rather than take any action to keep Plaintiff and individuals in her position safe, Defendant Interscope and Defendant Nothing Records promoted and financially benefited from Defendant Warner's sexually deviant, violent and pedophilic character.

94.     Defendant Interscope and Defendant Nothing Records breached their duties to Plaintiff. Defendants' failures include, but are not limited to, failure to protect Plaintiff from a known danger, failure to warn Plaintiff of the risk Defendant Warner posed; failure to take reasonable measures in light of what they knew or should have known; and failure to investigate the risks at their facilities.

95.     Defendant Interscope and Defendant Nothing Records breached their duties to Plaintiff by providing Defendant Warner with authority and/or apparent authority to access and sexually assault minors and women that attended the performances, including all ages concerts, and invited backstage and on the bus.

96.     Defendant Interscope and Defendant Nothing Records breached their duties to Plaintiff by providing, arranging, promoting and permitting Defendant Warner to use the Marilyn Manson performances as a means to access, groom, and sexually assault minors and women.

97.    By failing to address Defendant Warner's sexual assaults of women, Defendant
Interscope and Defendant Nothing Records permitted, approved, encouraged, and/or ratified
Defendant Warner's sexual assaults of Plaintiff.

98.    Defendant Interscope and Defendant Nothing Records negligently deemed that
Defendant Warner was fit; and/or that any previous suitability problems Defendant Warner had
were fixed and cured; and/or that Defendant Warner would not continue to sexually assault
minors and women; and/or that Defendant Warner would not injure minors and women.

99.    As a direct and proximate result of the foregoing acts of negligence, Plaintiff
sustained physical, emotional, and psychological injuries, along with pain and suffering.

### COUNT III
### Negligent Supervision and Retention
### (Against Defendant Interscope and Defendant Nothing Records and Does 1-20)

100.    Plaintiff repeats, re-alleges and incorporates herein by reference all consistent
paragraphs of this Complaint as if fully set forth herein.

101.    As overseers, operators, managers, and/or controllers of the band's shows, venues
and transportation and accommodations while on tour, where fans, including minors, were
invited to be in presence of Defendant Warner, Defendant Interscope and Nothing Records
expressly and implicitly represented that the band members, including Defendant Warner, were
not a sexual threat to their fans and others who would fall under Defendant Warner's influence,
control direction, and guidance.

102.    At all relevant times herein, Defendant Warner was employed by or was an agent
of Defendant Interscope and Defendant Nothing Records and was under the record label
Defendants' direct supervision, employ, and control when he committed the wrongful acts
alleged herein. Defendant Warner engaged in the wrongful conduct while engaged in his
employment or agency relationship with Defendant Interscope and Defendant Nothing Records

and/or accomplished the sexual abuse by virtue of his authority and access to fans. This access

was created and provided to Defendant Warner by Defendant Interscope and Defendant Nothing

Records.

103.    Defendant Interscope and Defendant Nothing Records had a duty, arising from its

relationship with Defendant Warner, to ensure that he did not sexually assault minors and

women. Defendant Interscope and Defendant Nothing Records also owed a duty to train and

educate employees, administrators, and agents, and establish adequate and effective policies and

procedures calculated to detect, prevent, and address inappropriate behavior and conduct with

minors and women.

104.    The tortious conduct complained of herein occurred on property (venues and

backstage) and in the facilities (buses) provided by Defendant Interscope and Defendant Nothing

Records for the shows and tours promoted by the record label Defendants.

105.    At no time did Defendant Interscope and Defendant Nothing Records have a

reasonable system or procedure in place to investigate, supervise, or monitor its staff and/or

agents, including Defendant Warner, to prevent pre-sexual grooming and sexual harassment,

molestation, and assault of fans, including minors and women.

106.    Defendant Interscope and Defendant Nothing Records, by and through its agents,

servants, and employees, knew or should have known of Defendant Warner's sexually abusive

and exploitative propensities and/or that Defendant Warner was an unfit agent. Despite such

knowledge, Defendant Interscope and Defendant Nothing Records negligently failed to supervise

Defendant Warner in his position of authority as the band's leader and front man, in which

position he was able to commit the wrongful acts against Plaintiff alleged herein. Defendant

Interscope and Defendant Nothing Records failed to provide reasonable supervision of

Defendant Warner, failed to use reasonable care in investigating Defendant Warner, and failed to

provide adequate warning to Plaintiff and her family regarding Defendant Warner's sexually abusive and exploitative propensities and unfitness. Defendant Interscope and Defendant Nothing Records further failed to take reasonable measures to prevent future sexual assault against minors and women. Instead, Defendant Interscope and Defendant Nothing Records promoted and benefited from Defendant Warner's sexually deviant, violent and pedophilic character.

107. Defendant Interscope and Defendant Nothing Records breached its duties to Plaintiff by, *inter alia*, failing to adequately monitor and supervise Defendant Warner and failing to stop Defendant Warner from committing wrongful sexual acts with minors and women, including Plaintiff. Defendant Interscope and Defendant Nothing Records also breached their duties to Plaintiff by actively maintaining an employment or agency relationship with Defendant Warner, who was in a position of power and authority through which Defendant Warner had access to the fans, and power and control over minors and women, including Plaintiff.

108. Defendant Interscope and Defendant Nothing Records were negligent in the training, supervision, and instruction of their employees and agents. Defendant Interscope and Defendant Nothing Records failed to timely and properly educate, train, supervise, and/or monitor their agents or employees with regard to policies and procedures that should be followed when sexual abuse of a minor or a woman is suspected or observed. Defendant Interscope and Defendant Nothing Records were additionally negligent in failing to supervise, monitor, chaperone, and/or investigate Defendant Warner and/or in failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Defendant Warner's sexual abuse of Plaintiff. In failing to properly supervise Defendant Warner, and in failing to establish such training procedures for employees and administrators, Defendant Interscope Records and Defendant Nothing Records failed to exercise the degree of care that reasonably prudent persons

would have exercised under similar circumstances.

109.    As a direct and proximate result of the foregoing acts of negligence, Plaintiff

sustained severe physical, emotional, and psychological injuries, along with pain and suffering.

### COUNT IV
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

110.    Plaintiff repeats, re-alleges and incorporates herein by reference all consistent

paragraphs of this Complaint as if fully set forth herein.

111.    Defendants' conduct as alleged herein was outrageous and exceeded all bounds of

decency and is odious and utterly intolerable in a civilized society.

112.    Defendants intended to cause Plaintiff emotional distress and/or acted with

reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that

Plaintiff was being sexually assaulted when she was invited backstage and on the bus while the

Defendant Warner was on tour and doing shows promoted by Defendant Interscope and

Defendant Nothing Records, beginning when she was 16 years old, again when she was 19 years

old.

113.    Despite known risks associated with the potential of childhood sexual assault

at the time, and the explicit criminalization of sexual assault of a minor, Defendants advanced

and promoted a different message—that pedophilia and violence was not just acceptable, but that

it was cool and fun. Defendants included symbols of pedophila on their marketing materials,

merchandise and record albums and CD covers, causing minors, including Plaintiff, to naively

replicate these symbols in their drawings, on their notebooks and elsewhere. Through its

promotional efforts, Defendants specifically targeted and marketed these messages to children

under the age of eighteen, and under the age of consent, including Plaintiff. As long as

Defendant Warner was making or had the potential to make Defendants large sums of money,

Defendants acted in the best interest of their investment, as opposed to the best interest of a child suffering from acts of sexual assault.

114.    Through their actions, as set forth in this Complaint, and on information and belief, notwithstanding their business interest, Defendants intended to cause Plaintiff emotional distress and/or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress both as a minor and a young woman.

115.    Defendant Interscope and Defendant Nothing Records knew, through Defendant Warner's own admission that he was a self-proclaimed pedophile and of his violent and sexually deviant behavior, and yet continued to facilitate and enable Defendant Warner's sexual assaults of Plaintiff that started when she was a minor and continued when she was young woman.

116.    Further, when Defendant Warner's physical assaults of Plaintiff ceased, he refused to let Plaintiff speak her truth and heal. Defendant Warner used his status, power and fame in the media to continue to threaten, harass and emotionally abuse Plaintiff.

117.    Additionally, Defendant Warner weaponized his fanbase to perpetuate his and initiate their own threats, harassment and emotional abuse of Plaintiff.

118.    Defendants' conduct caused emotional distress when Plaintiff was a minor and a young adult, and this emotional distress was and continues to be severe.

119.    As a direct and proximate result of the foregoing, Plaintiff sustained severe physical, emotional, and psychological injuries, along with pain and suffering.

**COUNT V**
**Violation of General New York General Business Law Section 349**
**(Against Defendant Interscope and Defendant Nothing Records and Does 1-20)**

120.    Plaintiff repeats, re-alleges and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

30

121.     Defendants conduct various business, trade or commercial functions and furnishes

services to consumers, the public and Plaintiff. This business includes, but is not limited to

providing entertainment, live music shows, music recordings, videos, products and merchandise

for profit. In the course of this conduct, Defendants engaged and engages in materially

misleading, deceptive acts and/or practices of violation of General Business Law Section 349.

122.     Defendants Interscope and Nothing Records' misleading, deceptive conduct

includes, but is not limited to concealing instances of sexual assault by Defendant Warner

against underage and adult fans, as well as instances of Defendant Warner and staff providing

drugs and alcohol to fans, including underage fans. Defendant Interscope and Defendant Nothing

Records deceptively fail to disclose and hide their full knowledge of Defendant Warner's sexual

abuse and specifically the history and propensity of sexual abuse perpetrated by Defendant

Warner on underage and adult fans. Furthermore, Defendant Interscope and Defendant Nothing

Records undertake various affirmative representations including, but not limited to holding out

its events, shows, concerts and the connected facilities including backstage, tour buses and

recording studios, and its performers including Defendant Warner, to be safe for underage and

adult fans, and that these facilities and performers do not have a history of or propensity for

sexual abuse and for providing drugs and alcohol, when in fact such a history and propensity

exists.

123.     Defendant Interscope and Defendant Nothing Records failed to disclose their full

knowledge of Defendant Warner's sexual abuse, while at the same time trading and financially

profiting from it. Defendants used violence, sexual exploitation, images of children, and illegal

drug and alcohol use to promote and profit from Defendant Warner and his band.

124.     Defendants Interscope and Nothing Records' deceptive conduct also includes, but

is not limited to conspiring and engaging and/or have conspired and engaged in efforts to: 1)

31

conceal from the proper civil authorities sexual assaults committed by Defendant Warner and

enabled by Defendants' agents against minor children and adult fans; and/or 2) evade Defendant

Warner from criminal prosecution for his sexual assaults against minor children and adult fans;

and/or 3) allow a known sexual abuser to continue to use his authority, power and fame to gain

access to minor children and young adult fans, unknown to the public, inviting fans backstage,

on the tour bus and in the recording studio.

125.    Defendants' conduct, described herein, is a deceptive pattern of practice and

conduct. Defendants continue to engage in this pattern and conduct by profiting from Defendant

Warner's music and paraphernalia.

126.    Defendants' conduct was and/or is likely to deceive a reasonable person.

Consumers, the public, Plaintiff and her family specifically and reasonably relied upon

Defendants' deceptive acts and practices.

127.    The Plaintiff has been injured as detailed in the preceding paragraphs of this

Complaint and as a result of Defendants' actions in violation of General Business Law (GBL)

Section 349.

128.    By refusing to disclose prior incidents of Defendant Warner's sexual abuse and

providing drugs and alcohol to minor and adult fans, and holding out that its events, facilities and

performers as reputable, trustworthy and safe, Defendants allowed minor and young adult fans to

be accessed by Defendant Warner who has a propensity to abuse or with a history of abuse.

129.    In fact, Defendants knew of Defendant Warner's dangerous sexual proclivities

and encouraged this behavoir and profited from it.

130.    Defendants' conduct, acts and practices are subject to enjoinment pursuant to

GBL Section 349(h) to prevent the conduct, acts and practices. Furthermore, Defendants'

conduct was intentional and willful such that imposition of an award of reasonable attorney's

fees to Plaintiff is warranted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1.      For past, present, and future general damages in an amount to be determined at trial;

2.      For past, present, and future special damages, including but not limited to past, present and future lost earnings, economic damages, and others in an amount to be determined at trial;

3.      Any appropriate statutory damages;

4.      For interest as allowed by law;

5.      For civil penalties as provided by law;

6.      An Order enjoining Defendants from future unlawful business practices including, but not limited to exposing minors and vulnerable adults to sexual abuse and exploitation;

7.      For any applicable costs of said suit;

8.      For reasonable attorneys fees;

9.      For any appropriate punitive of exemplary damages; and

10.     For such other and further relief as the Court may deem proper.

The amount of damages sought in this Complaint exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: January 30, 2023

_____
Jeffrey R. Anderson
Trusha Goffe
Patrick Stoneking
**JEFF ANDERSON & ASSOCIATES, P.A.**
55 West 39th Street, 11th Floor
New York, NY 10018
Telephone : (646) 759-2551

Karen Barth Menzies (*pro hac vice to be filed*)
**KBM LAW**
6701 Center Drive West, 1400
Los Angeles, CA 90045
Telephone : (310) 363-0030

*Counsel for Plaintiff*

# EXHIBIT B

At Part _____ of the Supreme Court of
the State of New York, held in and for
the County of Nassau, held at the
Courthouse, 100 Supreme Court
Drive, Mineola, NY 11501, on the
_____ day of _____, 2023

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

JANE DOE,

                Plaintiff,

- *against* -

BRIAN WARNER a/k/a MARILYN MANSON;
INTERSCOPE MUSIC PUBLISHING, INC.;
NOTHING RECORDS; and DOES 1–20, whose
identities are unknown to Plaintiff,

                Defendants.

Index No.:

**ORDER TO SHOW CAUSE FOR**
**LEAVE TO FILE A CIVIL ACTION**
**USING A PSEUDONYM**

Upon reading and filing the Affirmation of Jeffrey R. Anderson, Esq., sworn to on January 30, 2023, and upon the exhibits attached to the Affirmation, it is hereby

**ORDERED** that at the _____ Part of this Court to be held at 100 Supreme Court Drive, Mineola, NY, on the _____ day of _____, 2023, at _____ o'clock in the _____ or as soon as counsel may be heard why an Order should not be made:

1.      Providing permission for Plaintiff to commence this action under the pseudonym "JANE DOE" and with the caption "JANE DOE v. BRIAN WARNER a/k/a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1–20, whose identities are unknown to Plaintiff."

2.      Directing that the parties, their attorneys, and agents refrain from publishing Petitioner's true identity until this Court orders otherwise;

1

4.      Directing that all papers filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE" and bear the caption "JANE DOE v. BRIAN WARNER a/k/a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1–20, whose identities are unknown to Plaintiff", and directing the County Clerk to enter and record all papers in the action under the title "JANE DOE v. BRIAN WARNER a/k/a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1–20, whose identities are unknown to Plaintiff" until this Court orders otherwise; and

5.      Granting such other and further relief as may be just and proper; and it is further

**ORDERED THAT** sufficient cause appearing therefore, let service pursuant to C.P.L.R. § _____ to all Defendants of a copy of this Order, together with the papers upon which this Order is granted on or before the _____ day of _____ 2023, be deemed good and sufficient service. Plaintiff shall file and serve all evidence in support of the request by _____. An affidavit or other proof of service shall be presented to this Court on or before the return date directed in the second paragraph of this order.

Dated:  Mineola, NY

_____

                                                    **SO ORDERED:**


                                                    _____

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

|  |  |
|---|---|
| JANE DOE, | Index No.:_____ |
| Plaintiff, | ***EX PARTE* AFFIRMATION IN SUPPORT OF AN ORDER TO SHOW CAUSE FOR LEAVE TO FILE A CIVIL ACTION USING A PSEUDONYM** |
| v. | |
| BRIAN WARNER a/k/a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1–20, whose identities are unknown to Plaintiff, | |
| Defendants. | |

   JEFFREY R. ANDERSON, an attorney duly admitted to practice law in the State of New York, hereby affirms under the penalty of perjury as follows:

   1.  I am an attorney with Jeff Anderson & Associates PA, representing the Plaintiff in this CPLR § 214-j Adult Survivors Act action, and I am fully familiar with the facts and circumstances of this matter.

   2.  Pursuant to C.P.L.R. § 2217(b), there has been no previous result from any application made to this or any other court for the relief requested herein.

   3.  Plaintiff sustained serious and permanent personal injuries as a result of being sexually abused. Plaintiff's Complaint describes in detail the events surrounding Plaintiff's claims. The nature of Plaintiff's claims give rise to significant privacy and safety concerns that support the use of a pseudonym.

   4.  There are several cases for which I am counsel in Nassau County where the Court has issued orders allowing the use of a pseudonym because of similar privacy concerns. *See e.g. ARK15 Doe v. Diocese of Rockville Centre, et al.*, Index No. 900014/2019 (February 5, 2020);

1

*ARK18 Doe v. Diocese of Rockville Centre, et al.*, Index No. 900016/2019 (February 5, 2020);

*ARK21 Doe v. Diocese of Rockville Centre et al.*, Index No. 900017/2019 (February 4, 2020).

5.      This lawsuit involves a course of conduct that began when Plaintiff was a child and extended into adulthood. As an adult victim of childhood sexual abuse, Plaintiff shares many of the same privacy concerns and fears that were present in the above-referenced cases brought under the New York Child Victims Act. These privacy concerns are not ameliorated simply because the sexual assaults at issue in the case continued until she was 19 years old.

6.      I am attaching as Exhibit A a redacted affidavit from the Plaintiff in this case in support of her request to proceed under a pseudonym. As noted in the affidavit, the Plaintiff has real privacy concerns and fear of retribution associated with the publication of her name in connection with this lawsuit.

7.      Plaintiff alleges that these Defendants have retaliated against her for coming forward with her allegations and fears further retaliation.

8.      This litigation is likely to be newsworthy and Plaintiff is concerned for her safety if her identity were to be further publicized.

9.      The allegations in the underlying case involve threats of violence by the Defendant and his many fans. There is a substantial basis for concern.

10.     There is no prejudice to the Defendants by allowing the use of a pseudonym.

11.     Even if there is opposition to the use of a pseudonym after these Defendants appear, the parties will be in a position to address it with motion practice within the Court's desired timeline to do so.

### A.      Allowing This Survivor Of Sexual Abuse To Proceed Anonymously Is Supported By New York Law.

12.     In previous rulings in Nassau County allowing the use of a pseudonym under

2

similar circumstances, the rulings have favorably cited reasoning from *Doe v. Roman Catholic Archdiocese of New York*, 64 Misc. 3d 1220(A) (Sup. Ct., Westchester Co. 2019), which recognized a balance between the plaintiff's privacy interest and the presumption in favor of open trials and against any prejudice to the defendant. With respect to that balance, in situations exactly like this, this Court held that a plaintiff's concern for privacy and psychological health outweighs the need to keep facts open to the public and the prejudice claimed by the defendants who opposed anonymity.

13.     This Court further held that it "believes the only purpose public revelation of Plaintiff's name could have would be to expose Plaintiff to the potential harms of public disclosure and perhaps deter him from litigating the matter. The public interest and purpose of the CVA is to allow the case to be determined on its merits, after the parties have had an opportunity to fully and fairly litigate the issues." *ARK21 Doe v. Diocese of Rockville Centre*, et al., Index No. 900017/2019. The public interest and purpose surrounding the Adult Survivors Act are exactly the same and forcing survivors to reveal their identities in court filings would only detract from its purpose. This Plaintiff should not be subject to further intimidation as a way to keep her silent and avoid responsibility – the case should be decided on its merits.

**B.     Other New York Courts Have Granted Permission to Similarly-Situated Plaintiffs.**

14.     The rulings in favor of pseudonyms are in accord with decisions elsewhere in New York. For example, the Honorable George J. Silver, the Deputy Chief Administrative Judge for the New York City courts entered numerous Order and Decisions in CVA matters granting the same relief requested here. *See, e.g., ARK1 Doe v. Archdiocese of New York, et al.,* Index No. 950035/2019; *ARK99 Doe v. The Boy Scouts of America, et al.*, Index No. 950096/2019.

15.     Justice Silver considered the compelling interest a survivor of childhood sexual

3

abuse asserts when requesting to proceed using a pseudonym:

> The instant case involves alleged acts that will no doubt center on information about plaintiff of a sensitive and highly personal nature. The court recognizes that plaintiff, as the alleged victim of sexual abuse, has undoubtedly suffered great emotional distress. Moreover, this case has not been brought against a government entity, a factor this court believes would miligated in favor of the public's right to know. Instead, defendants are private entities and institutions, and therefore are not prejudiced at this time. In contrast, revelation of plaintiff's name could unsettle plaintiff and perhaps deter plaintiff from litigating this matter. *Such an outcome would undoubtedly undermine the very purpose for which the CVA was enacted. To be sure, revelation of plaintiff's identify would undermine the litigation by denying a portion of the relief ultimately requested in the action.*

*Id.* at 2-3 (emphasis added).

16.    Just as the court's reasoning recognizes this compelling interest, the court also recognized a lack of prejudice from the pseudonym to these private entity defendants and institutions. *Id.* at 3.

17.    The court also found that the public "has an interest in seeing this case determined on its merit," with anonymity of the plaintiff preserving "the integrity of that stated objective." *Id* at 3.

18.    Moreover, the court expressly held that this same reasoning applies even when there is no agreement among the parties to proceed using a pseudonym:

> While the relief herein has been agreed to via stipulation, the court finds that a decision reflecting its deliberation on the application herein is warranted. Accordingly, the decision and order that follows reflects the court's determination, *notwithstanding the parties' agreement reflected in the attached stipulation.*

*Id.* at 1 (emphasis added).

19.    In cases where a defendant objected to the use of a pseudonym by an abuse survivor, Justice Silver allowed the cases to proceed under the pseudonym over the objections. *See e.g.,*

4

*ARK55 Doe v. Archdiocese of New York, et al.*, Index No. 950049/2019.

20. Plaintiff will provide and confidentially communicate Plaintiff's name and other identifying information to Defendants in this matter. The relief requested is solely for public anonymity and permission to use a pseudonym in the caption of court filings.

**WHEREFORE**, based upon the foregoing, it is respectfully requested that this Court issue an Order for the following relief:

(i) Permitting Plaintiff to proceed in this action for a specified period of time under the pseudonym "JANE DOE" and with the caption "JANE DOE v. BRIAN WARNER a/k/a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1–20, whose identities are unknown to Plaintiff";

(ii) Directing that the parties, their attorneys, and agents refrain from publishing Plaintiff's true identity while the issue is under dispute between the parties;

(iii) Directing that all papers filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE" and bear the caption "JANE DOE v. BRIAN WARNER a/k/a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1–20, whose identities are unknown to Plaintiff," and directing the County Clerk to enter and record all papers in the action under the title "JANE DOE v. BRIAN WARNER a/k/a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1–20, whose identities are unknown to Plaintiff" until further notice; and

(iv) Granting such other and further relief as may be just and proper.

5

Dated: January 30, 2023
        New York, New York

/s/ Jeffrey R. Anderson
Jeffrey R. Anderson
Trusha Goffe
Patrick Stoneking
**JEFF ANDERSON & ASSOCIATES, P.A.**
55 W. 39th St., 11th Floor
New York, NY 10018
Telephone: (646) 759-2551
Email: *Jeff@AndersonAdvocates.com*
Email: *Trusha@AndersonAdvocates.com*
Email: *PStoneking@AndersonAdvocates.com*

*Counsel for Plaintiff*

6

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

JANE DOE,

Plaintiff,

- against -

BRIAN WARNER a/k/a MARILYN
MANSON; INTERSCOPE MUSIC
PUBLISHING, INC.; NOTHING RECORDS;
and DOES 1–20, whose identities are unknown
to Plaintiff,

Defendants.

Index No. _____

**Affidavit of Plaintiff in Support of**
**Proceeding Under Pseudonym**

STATE OF MARYLAND          )
                          ) ss
COUNTY OF _Carroll_        )

▮▮▮▮▮▮, being duly sworn, deposes and says:

1. I am the plaintiff in this action, identified in the caption as "JANE DOE."

2. I make this affidavit in support of my request to proceed under a pseudonym and keep my identity from being publicly disclosed as a part of this lawsuit.

3. I was sexually abused as a child and as a young adult. As part of the abuse that I suffered, I was manipulated and controlled by a powerful and famous individual.

4. The sexual abuse and grooming occurred over a period of years. It started when I was a child and extended into my adulthood.

1

5. I have lived with the effects of the sexual abuse throughout my life. A few years ago, several other women disclosed abuse at the hands of the same person. I reached out to one of them directly and privately. I came to learn after that some of what I communicated was revealed to others and my identity came out. Soon after, I was surprised to be contacted by reporters who asked me about what happened to me. Looking back on that time, I was not ready for any public disclosure of the abuse as I was certainly not seeking any attention.

6. In response to the reports and stories, I received a massive amount of backlash and retaliation that has left me fearful for my safety. I was accused of seeking attention and seeking money, which are not why I came forward at all. I suffered hacks and online harassment. With the publicity I became concerned for my future, my career, and my family as a result of making allegations. I am concerned for my family that they will be targeted.

7. I am concerned about filing this lawsuit and how it will be newsworthy. I believe it will give rise to further retaliation, both by the Defendant in this case, the record companies, or his legion of fans. My concerns include a risk of potential physical violence against me and those close to me.

8. I do not want the details of my abuse shared with the general public. If I were to be forced to publicize my identity as a part of filing this lawsuit, I would strongly reconsider proceeding with it.

Sworn to before me this
29 day of January, 2023

Notary Public

MIGUEL FUENTES JR
My Commission Expires
NOTARY
PUBLIC
08-27-2025
CARROLL COUNTY MD

2

## CERTIFICATE OF CONFORMITY

STATE OF MARYLAND     )

                         ) ss

COUNTY OF    _Carroll_      )

I am a Notary Public duly commissioned in the State of Maryland. On the **2?** day of January, in the year 2023 before me, the undersigned, personally appeared ▮▮▮ ▮▮, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument. I make this certification that the signing of said document by deponent and my notarization of the same was completed in accordance with the laws of my jurisdiction.



Signature and office of individual
Taking acknowledgement



# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 02/01/2022)

## Supreme COURT, COUNTY OF Nassau

Index No: _____  Date Index Issued: _____

| | For Court Use Only: |
|---|---|

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

| | IAS Entry Date |
|---|---|

JANE DOE

Plaintiff(s)/Petitioner(s)

| | Judge Assigned |
|---|---|

-against-

BRIAN WARNER a/k/a MARILYN MANSON, INTERSCOPE MUSIC PUBLISHING, INC., NOTHING RECORDS, DOES 1-20, whose identities are unknown to Plaintiff

| | RJI Filed Date |
|---|---|

Defendant(s)/Respondent(s)

## NATURE OF ACTION OR PROCEEDING:   Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ☒ Adult Survivors Act
- ☐ Asbestos
- ☐ Environmental (specify): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☐ Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act (specify): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration   [see *NOTE* in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (specify): ☐ Initial ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

**MATRIMONIAL**
- ☐ Contested

   *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M).*

   *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY** Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify): ☐ Residential ☐ Commercial

   Property Address: _____

   *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ☐ Partition

   *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).*
- ☐ Tax Certiorari (specify): Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution   [see *NOTE* in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

## STATUS OF ACTION OR PROCEEDING   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☒ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

## NATURE OF JUDICIAL INTERVENTION   Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- ☐ Notice of Motion   Relief Requested: _____   Return Date: _____
- ☐ Notice of Petition   Relief Requested: _____   Return Date: _____
- ☒ Order to Show Cause   Relief Requested: Amend Caption/Pleadings   Return Date: _____
- ☐ Other Ex Parte Application   Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Poor Person Application
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | | |
|---|---|---|---|---|---|
| **Case Title** | **Index/Case Number** | **Court** | **Judge (if assigned)** | **Relationship to instant case** | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | |
|---|---|---|---|---|
| **Un-Rep** | **Parties** <br> List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | **Attorneys and Unrepresented Litigants** <br> For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | **Issue Joined** <br> For each defendant, indicate if issue has been joined. | **Insurance Carriers** <br> For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: DOE, JANE <br><br> Role(s): Plaintiff/Petitioner | JEFFREY ANDERSON, JEFF ANDERSON & ASSOCIATES, P.A., 366 Jackson St Ste 100 , Saint Paul, MN  55101, jeff@andersonadvocates.com | ☐ YES  ☒ NO | |
| ☒ | Name: WARNER, BRIAN <br><br> Role(s): Defendant/Respondent | 10521 Laramie Avenue, Chatsworth, CA  91311 | ☐ YES  ☒ NO | |
| ☒ | Name: INTERSCOPE MUSIC PUBLISHING, INC. <br> Role(s): Defendant/Respondent | 2220 Colorado Avenue, Santa Monica, CA  90404 | ☐ YES  ☒ NO | |
| ☒ | Name: NOTHING RECORDS <br><br> Role(s): Defendant/Respondent | | ☐ YES  ☒ NO | |
| ☒ | Name: DOES 1-20, whose identities are unknown to Plaintiff <br> Role(s): Defendant/Respondent | | ☐ YES  ☒ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:   01/30/2023

JEFFREY ROBERT ANDERSON
_____
Signature

4880860
_____
Attorney Registration Number

JEFFREY ROBERT ANDERSON
_____
Print Name

*This form was generated by NYSCEF*

SHORT FORM ORDER

## SUPREME COURT - STATE OF NEW YORK

Present:    HON. R. BRUCE COZZENS - SUPREME COURT JUSTICE

---

JANE DOE,

                              Plaintiff,

              -against-

BRIAN WARNER a/k/a MARILYN MANSON;
INTERSCOPE MUSIC PUBLISHING, INC.;
NOTHING RECORDS; and DOES 1-20,
whose identities are unknown to Plaintiff,

                              Defendants.

TRIAL/ IAS PART 1

NASSAU COUNTY

INDEX NO. 900001-2023
MOT SEQ. #001

---

The following papers read on this Order to Show Cause:

OSC/Affirmation/Affidavit/Exhibit ..........................................X
Summons and Complaint...........................................................X

The above captioned case is hereby referred to the Honorable Vito M. DeStefano, Administrative Judge - Nassau County for the purpose of reassignment to another Justice of this Court pursuant to 22 NYCRR Section 202.3(b).

Based on this Court's own motion the undersigned Justice recuses himself from hearing this action.

Dated:  JAN 31 2023

                                                            _____
                                                            Hon. R. Bruce Cozzens
                                                            Supreme Court Justice

## ENTERED
### Feb 01 2023
NASSAU COUNTY
COUNTY CLERK'S OFFICE

FILED: NASSAU COUNTY CLERK 01/30/2023 07:48 AM

NYSCEF DOC. NO. 1

INDEX NO. 900001/2023

RECEIVED NYSCEF: 01/30/2023

2/15/23

OCTH

Hon: Felice J. Muraca J.S.C.

At Part 41 of the Supreme Court of
the State of New York, held in and for
the County of Nassau, held at the
Courthouse, 100 Supreme Court
Drive, Mineola, NY 11501, on the
1st day of Feb., 2023

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU**

JANE DOE,

Plaintiff,

- against -

BRIAN WARNER a/k/a MARILYN MANSON;
INTERSCOPE MUSIC PUBLISHING, INC.;
NOTHING RECORDS; and DOES 1-20, whose
identities are unknown to Plaintiff,

Defendants.

Index No.: 900001-2023

**ORDER TO SHOW CAUSE FOR
LEAVE TO FILE A CIVIL ACTION
USING A PSEUDONYM**

In Person Appearance
Required on Return
Date of 2/15/23

Upon reading and filing the Affirmation of Jeffrey R. Anderson, Esq., sworn to on January

30, 2023, and upon the exhibits attached to the Affirmation, it is hereby

**ORDERED** that at the _41_ Part of this Court to be held at 100 Supreme Court Drive,

Mineola, NY, on the _15th_ day of _February_, 2023, at _10:30 Am_ o'clock in the _Forenoon_

or as soon as counsel may be heard why an Order should not be made:  (IN PERSON)

1. Providing permission for Plaintiff to commence this action under the pseudonym

"JANE DOE" and with the caption "JANE DOE v. BRIAN WARNER a/k/a MARILYN

MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1-

20, whose identities are unknown to Plaintiff."

2. Directing that the parties, their attorneys, and agents refrain from publishing

Petitioner's true identity until this Court orders otherwise;

1.

FILED: NASSAU COUNTY CLERK 01/30/2023 07:48 AM
NYSCEF DOC. NO. 3

4.     Directing that all papers filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE" and bear the caption "JANE DOE v. BRIAN WARNER a.k.a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1-20, whose identities are unknown to Plaintiff", and directing the County Clerk to enter and record all papers in the action under the title "JANE DOE v. BRIAN WARNER a/k/a MARILYN MANSON; INTERSCOPE MUSIC PUBLISHING, INC.; NOTHING RECORDS; and DOES 1-20, whose identities are unknown to Plaintiff" until this Court orders otherwise; and

5.     Granting such other and further relief as may be just and proper; and it is further

ORDERED THAT sufficient cause appearing therefore, let service pursuant to C.P.L.R § 308 *by personal service* to all Defendants of a copy of this Order, together with the papers upon which this Order is granted on or before the *7th* day of *Feb* 2023, be deemed good and sufficient service. Plaintiff shall file and serve all evidence in support of the request by *2/8/23*. An affidavit or other proof of service shall be presented to this Court on or before the return date directed in the second paragraph of this order. *Opposition to be filed by 2/14/23*

Dated: Mineola, NY
*2/1/23*

*Failure to Appear May Result in An Adverse finding (22 NYCRR 202.27)*

SO ORDERED:

HON. FELICE J. MURACA
A.J.S.C.

# ENTERED
## Feb 01 2023
NASSAU COUNTY
COUNTY CLERK'S OFFICE

2

**SHORT FORM ORDER**

## SUPREME COURT - STATE OF NEW YORK

**Present:**     **HON. R. BRUCE COZZENS - SUPREME COURT JUSTICE**

---

JANE DOE,

|                           | **TRIAL/ IAS PART 1** |
| ------------------------- | --------------------- |

                                          Plaintiff,

**NASSAU COUNTY**

            -against-

**INDEX NO.  900001-2023**
**MOT SEQ. #001**

BRIAN WARNER a/k/a MARILYN MANSON;
INTERSCOPE MUSIC PUBLISHING, INC.;
NOTHING RECORDS; and DOES 1-20,
whose identities are unknown to Plaintiff,

                                          Defendants.

---

The following papers read on this Order to Show Cause:

OSC/Affirmation/Affidavit/Exhibit ...........................................X
Summons and Complaint..........................................................X

The above captioned case is hereby referred to the Honorable Vito M. DeStefano, Administrative Judge - Nassau County for the purpose of reassignment to another Justice of this Court pursuant to 22 NYCRR Section 202.3(b).

Based on this Court's own motion the undersigned Justice recuses himself from hearing this action.

Dated: JAN 31 2023

_____
Hon. R. Bruce Cozzens
Supreme Court Justice